UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

CARLA JEAN McCOY,

                       Plaintiff,

          v.

COMMISSIONER OF SOCIAL SECURITY,

                       Defendant.
_____

DECISION & ORDER

19-CV-0646MWP

**PRELIMINARY STATEMENT**

        Plaintiff Carla Jean McCoy ("McCoy") brings this action pursuant to Section 205(g) of the Social Security Act, 42 U.S.C. § 405(g), seeking judicial review of a final decision of the Commissioner of Social Security (the "Commissioner") denying her applications for Supplemental Security Income and Disability Insurance Benefits ("SSI/DIB").  Pursuant to the Standing Order of the United States District Court for the Western District of New York regarding Social Security cases dated June 1, 2018, this case has been reassigned to, and the parties have consented to the disposition of this case by, the undersigned.  (Docket # 9).

        Currently before the Court are the parties' motions for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure.  (Docket ## 5, 7).  For the reasons set forth below, this Court finds that the decision of the Commissioner is supported by substantial evidence in the record and is in accordance with applicable legal standards.  Accordingly, the Commissioner's motion for judgment on the pleadings is granted, and McCoy's motion for judgment on the pleadings is denied.

## DISCUSSION

**I.     Standard of Review**

This Court's scope of review is limited to whether the Commissioner's determination is supported by substantial evidence in the record and whether the Commissioner applied the correct legal standards. *See Butts v. Barnhart*, 388 F.3d 377, 384 (2d Cir. 2004) ("[i]n reviewing a final decision of the Commissioner, a district court must determine whether the correct legal standards were applied and whether substantial evidence supports the decision"), *reh'g granted in part and denied in part*, 416 F.3d 101 (2d Cir. 2005); *see also Schaal v. Apfel*, 134 F.3d 496, 501 (2d Cir. 1998) ("it is not our function to determine *de novo* whether plaintiff is disabled[;] . . . [r]ather, we must determine whether the Commissioner's conclusions are supported by substantial evidence in the record as a whole or are based on an erroneous legal standard") (internal citation and quotation omitted).  Pursuant to 42 U.S.C. § 405(g), a district court reviewing the Commissioner's determination to deny disability benefits is directed to accept the Commissioner's findings of fact unless they are not supported by "substantial evidence." *See* 42 U.S.C. § 405(g) ("[t]he findings of the Commissioner . . . as to any fact, if supported by substantial evidence, shall be conclusive"). Substantial evidence is defined as "more than a mere scintilla.  It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (internal quotation omitted).

To determine whether substantial evidence exists in the record, the court must consider the record as a whole, examining the evidence submitted by both sides, "because an analysis of the substantiality of the evidence must also include that which detracts from its weight." *Williams ex rel. Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988).  To the extent

they are supported by substantial evidence, the Commissioner's findings of fact must be sustained "even where substantial evidence may support the claimant's position and despite the fact that the [c]ourt, had it heard the evidence *de novo*, might have found otherwise." *Matejka v. Barnhart*, 386 F. Supp. 2d 198, 204 (W.D.N.Y. 2005) (citing *Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982), *cert. denied*, 459 U.S. 1212 (1983)).

A person is disabled for the purposes of SSI and disability benefits if he or she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A) & 1382c(a)(3)(A). In assessing whether a claimant is disabled, the ALJ must employ a five-step sequential analysis. *See Berry v. Schweiker*, 675 F.2d 464, 467 (2d Cir. 1982) (*per curiam*). The five steps are:

(1) whether the claimant is currently engaged in substantial gainful activity;

(2) if not, whether the claimant has any "severe impairment" that "significantly limits [the claimant's] physical or mental ability to do basic work activities";

(3) if so, whether any of the claimant's severe impairments meets or equals one of the Listings in Appendix 1 of Subpart P of Part 404 of the relevant regulations;

(4) if not, whether despite the claimant's severe impairments, the claimant retains the residual functional capacity [("RFC")] to perform his or her past work; and

(5) if not, whether the claimant retains the [RFC] to perform any other work that exists in significant numbers in the national economy.

20 C.F.R. §§ 404.1520(a)(4)(i)-(v) & 416.920(a)(4)(i)-(v); *Berry v. Schweiker*, 675 F.2d at 467. "The claimant bears the burden of proving his or her case at steps one through four[;] . . . [a]t

3

step five the burden shifts to the Commissioner to 'show there is other gainful work in the national economy [which] the claimant could perform.'" *Butts v. Barnhart*, 388 F.3d at 383 (quoting *Balsamo v. Chater*, 142 F.3d 75, 80 (2d Cir. 1998)).

## II.     The ALJ's Decision

In his decision, the ALJ followed the required five-step analysis for evaluating disability claims. (Tr. 10-21).[1] At step one of the process, the ALJ found that McCoy had not engaged in substantial gainful activity since March 31, 2015, the alleged onset date. (*Id.*). In reaching this determination, the ALJ recognized that McCoy had engaged in work activity subsequent to the alleged onset date and that she had earned substantial gainful activity during several quarters after the alleged onset date. (*Id.*). Nevertheless, "as a prophylactic adjudicatory measure," the ALJ found that she had not engaged in substantial gainful activity and proceeded through the remaining steps of the analysis. At step two, the ALJ concluded that McCoy had the severe impairments of chronic obstructive pulmonary disease ("COPD"), major depressive disorder, dysthymia, and panic disorder without agoraphobia. (*Id.*). At step three, the ALJ determined that McCoy did not have an impairment (or combination of impairments) that met or medically equaled one of the listed impairments. (*Id.*). With respect to McCoy's mental limitations, the ALJ found that she suffered from moderate limitations in understanding, remembering, or applying information and concentrating, persisting or maintaining pace, and mild limitations in interacting with others and adapting or managing oneself. (*Id.*). The ALJ concluded that McCoy had the RFC to perform work at all exertional levels, but that she was unable to perform any complex work involving multiple simultaneous goals or objectives or the

---

[1] The administrative transcript (Docket # 4) shall be referred to as "Tr. ___," and references thereto utilize the internal Bates-stamped pagination assigned by the parties.

4

need to independently set quality or quantity standards, and was limited to work involving simple, repetitive 1-2 step tasks, no public contact, occasional contact with coworkers and supervisors, and no more than one change per day in work task or locations. (*Id.*). At steps four and five, the ALJ determined that McCoy was unable to perform her past relevant work but that jobs existed in the national economy that McCoy could perform, including the positions of laundry laborer and factory helper. (*Id.*). Accordingly, the ALJ found that McCoy was not disabled. (*Id.*).

### III.   McCoy's Contentions

McCoy contends that the ALJ's determination that she is not disabled is not supported by substantial evidence and is the product of legal error. (Docket # 5-1). First, McCoy maintains that the ALJ's physical RFC assessment is flawed because it was not based upon a medical opinion of McCoy's functional limitations. (*Id.* at 9-12). Second, McCoy asserts that the ALJ failed to account for the moderate mental limitations assessed by the non-examining consultant Janet Souder ("Souder"), Psy.D. (*Id.* at 12-15).

### IV.   Analysis

An individual's RFC is her "maximum remaining ability to do sustained work activities in an ordinary work setting on a regular and continuing basis." *Melville v. Apfel,* 198 F.3d 45, 52 (2d Cir.1999) (quoting SSR 96–8p, 1996 WL 374184, *2 (July 2, 1996)). When making an RFC assessment, the ALJ should consider "a claimant's physical abilities, mental abilities, symptomology, including pain and other limitations which could interfere with work activities on a regular and continuing basis." *Pardee v. Astrue*, 631 F. Supp. 2d 200, 221

(N.D.N.Y. 2009) (citing 20 C.F.R. § 404.1545(a)). "To determine RFC, the ALJ must consider all the relevant evidence, including medical opinions and facts, physical and mental abilities, non-severe impairments, and [p]laintiff's subjective evidence of symptoms." *Stanton v. Astrue*, 2009 WL 1940539, *9 (N.D.N.Y. 2009) (citing 20 C.F.R. §§ 404.1545(b)-(e)), *aff'd*, 370 F. App'x 231 (2d Cir. 2010).

### A. The ALJ's Physical RFC Determination

I turn first to McCoy's challenge to the ALJ's physical RFC assessment. (Docket # 5-1 at 9-12). McCoy reasons that because the ALJ did not rely upon any medical opinion containing a functional assessment of her physical work-related capabilities, her RFC is not based upon substantial evidence. (*Id.*). I disagree.

"It is well established in the Second Circuit that an ALJ is under an obligation to develop the administrative record fully, to ensure that there are no inconsistencies in the record that require further inquiry, and to obtain the reports of treating physicians and elicit the appropriate testimony during the proceeding." *Martello v. Astrue*, 2013 WL 1337311, *3 (W.D.N.Y. 2013). Given the non-adversarial nature of a Social Security hearing, "[t]he duty of the ALJ, unlike that of a judge at trial, is to 'investigate and develop the facts and develop the arguments both for and against the granting of benefits.'" *Vincent v. Comm'r of Soc. Sec.*, 651 F.3d 299, 305 (2d Cir. 2011) (quoting *Butts*, 388 F.3d at 386). Although the Commissioner has a general duty to develop the record, it is ultimately "the plaintiff's burden to furnish . . . medical and other evidence of disability." *Threatt v. Colvin*, 2016 WL 1103864, *4 (W.D.N.Y. 2016).

Despite a general duty to develop the record, including obtaining medical opinions of the claimant's functional capabilities, the "regulatory language provides ample flexibility for the ALJ to consider a broad array of evidence as 'medical opinions.'" *Rouse v.*

6

*Colvin*, 2015 WL 7431403, *5 (W.D.N.Y. 2015) (quoting *Sickles v. Colvin*, 2014 WL 795978, *4 (N.D.N.Y. 2014)). In any event, "it is not *per se* error for an ALJ to make the RFC determination absent a medical opinion." *Lewis v. Colvin*, 2014 WL 6609637, *6 (W.D.N.Y. 2014) (citing *Tankisi v. Comm'r of Soc. Sec.*, 521 F. App'x 29 (2d Cir. 2013)). This is particularly true where the medical evidence shows relatively minor physical impairments such that the ALJ "permissibly can render a common sense judgment about functional capacity even without a physician's assessment." *Id.* (quotations omitted). The salient question is whether the record "contains sufficient evidence from which an ALJ can assess the [claimant's RFC]." *Id.* (quoting *Tankisi v. Comm'r of Soc. Sec.*, 521 F. App'x at 34).

Having carefully reviewed the administrative record, I conclude that there is no gap, the ALJ properly formulated McCoy's physical RFC based upon a comprehensive review of the record, and his determination is supported by substantial evidence in the record. McCoy's medical records, imaging results, and her own statements regarding her capabilities demonstrate that the ALJ permissibly formulated McCoy's RFC to account for any physical impairments supported by the record without the assistance of a medical opinion.

As an initial matter, McCoy's medical records demonstrate that she has sought limited, if any, treatment for any ongoing physical impairments. To the contrary, McCoy's treatment history primarily addressed her ongoing mental health impairments. (Tr. 296-377). With respect to her physical well-being, she sporadically sought treatment for complaints of polyuria and a rash, both of which apparently resolved with treatment. (Tr. 390-93, 398-400, 409-18). She also visited her doctor in September and November of 2016 with complaints of weight loss, dizziness, neck pain that had improved, and tooth pain. (Tr. 381-82, 385-89).

Between 2014 and 2016, McCoy visited her primary care physician several times complaining of a persistent cough, which was attributed to various potential causes, including an infection, her prescribed medications, and allergies. (Tr. 387-89, 401-03, 405-08). A chest x-ray conducted on April 27, 2015 was unremarkable, demonstrating clear and well-aerated lungs. (Tr. 403). In 2016, McCoy's physician advised her to stop smoking and ordered another chest x-ray, which was not completed. (Tr. 383-89).

In July 2017, McCoy began treatment with Qamrunnisa Rahman ("Rahman), MD, reporting that she was applying for work in the caregiving field and needed a physical evaluation form completed. (Tr. 459-64). Upon examination, Rahman observed that McCoy had decreased airflow. (*Id.*). She assessed COPD and ordered a chest x-ray and a pulmonary function test. (*Id.*). According to Rahman, McCoy was a longtime smoker, but had not had any recent pulmonary functioning tests. (*Id.*). The chest x-rays revealed no active cardiopulmonary process and the pulmonary function test demonstrated "essentially normal spirometric data and lung volume." (Tr. 470-71). Rahman prescribed Symbicort and her subsequent examinations demonstrated clear auscultation in McCoy's lungs. (Tr. 452-58). During these visits, McCoy was described as "physically quite active," having reported that she engaged in exercise and walking at home. (Tr. 460-64). During a follow-up visit on October 2, 2017, Rahman did not identify COPD as an ongoing impairment and did not recommend any additional respiratory-related treatment. (Tr. 452-54).

In her application for benefits, McCoy did not identify any physical impairments as impediments to her ability to work; instead, she only identified mental impairments, including a nervous breakdown in July 2015, major depression, panic attacks, and slow learning, as conditions that limited her ability to work. (Tr. 238). Contrary to McCoy's current contentions

(Docket # 5-1 at 10), her testimony during the administrative hearing does not support that she suffered from any ongoing physical impairments, and she did not attribute her inability to work to physical infirmities, particularly any respiratory issues. (Tr. 51-53). Indeed, after vague testimony concerning her difficulty with balance at her previous job, the ALJ directly asked McCoy's counsel whether there was anything in the record to support that McCoy suffered from any physical impairment. (Tr. 54). Her counsel responded that there was not. (*Id.*).

Evidence in the record is consistent with the ALJ's conclusion that McCoy did not suffer from any ongoing physical limitations. The evidence demonstrated that during the relevant period McCoy was employed as a cashier, welder, and as a nurse's aide, at times at substantial gainful levels. (Tr. 35, 38-41). McCoy testified that she was unable to maintain these jobs, primarily due to her mental impairments, which caused her to have poor attendance and difficulty interacting with others. (Tr. 40-41). Although she testified that she was unable to "physically" perform the welder position, she clarified that she was unable to maintain the pace that the position required. (*Id.*). Additionally, the record suggests that McCoy participated in substantial activities of daily living including, attending GED classes, working, household chores, shopping, cooking, and exercising. (Tr. 34-41, 49-50, 262-64).

In sum, the record contained McCoy's medical treatment records and testing results, and there are no apparent gaps in those records. A comprehensive review of the record demonstrates that McCoy suffered from COPD. Nothing in the record suggests that this physical impairment limited her ability to engage in work-related activities. Under such circumstances, I conclude that the ALJ was permitted to formulate an RFC without a medical opinion that directly assessed McCoy's physical ability to complete work-related functions. *See Crouse v. Colvin*, 2017 WL 975973, *6 (N.D.N.Y. 2017) (ALJ did not err by rejecting all medical opinions of

record and assessing plaintiff's RFC based upon the medical record where the medical evidence demonstrated relatively minor physical impairment); *Countryman v. Colvin*, 2016 WL 4082730, *13 (W.D.N.Y. 2016) (ALJ was permitted to make common sense judgment regarding plaintiff's reaching limitation despite absence of medical opinion assessing that limitation where record showed relatively minor impairment and where "lack of . . . evidence in the record support[ed] a more restrictive limitation"); *Lay v. Colvin*, 2016 WL 3355436, *7 (W.D.N.Y. 2016) (ALJ was permitted to consider medical records and use common sense judgment to arrive "at a reasonable conclusion regarding [p]laintiff's RFC, as permitted by the [r]egulations"); *Rouse v. Colvin*, 2015 WL 7431403 at *6 (no "*per se* error" where record did not contain "recent medical opinion that specifies [p]laintiff's specific functional abilities, or evidence that an RFC report was requested" where "RFC determination was based on substantial evidence because the record contained ample evidence for the ALJ to make a finding on disability"); *Lewis v. Colvin*, 2014 WL 6609637 at *6 ("[i]n light of the record evidence, the relatively minor physical impairments at issue, and the absence of physician/patient relationships, this [c]ourt concludes it was permissible for the ALJ to make an RFC determination without a treating source's opinion"); *Schade v. Colvin*, 2014 WL 4204946, *23 (E.D. Mo. 2014) (ALJ did not err by failing to order consultative examination to assess plaintiff's mental capabilities where plaintiff did not include allegations of depression or anxiety in her application and did not testify to any mental impairments that limited her ability to work); *Gillard v. Colvin*, 2013 WL 954909, *3 (N.D.N.Y. 2013) (ALJ did not err in failing to order consultative psychological exam where plaintiff sought sporadic treatment for mental health issues and did not identify any limitations caused by depression in application or hearing testimony); *Brown v. Astrue*, 2013 WL 310292, *3 (N.D.N.Y. 2013) (ALJ permissibly rendered common sense judgment regarding plaintiff's

10

ability to lift and carry despite absence of medical source statement opining as to weight plaintiff could manage where record demonstrated relatively minor physical impairment and ALJ's determination was supported by medical evidence of record); *Bianco v. Astrue*, 2012 WL 441147, *11 (E.D. Mo. 2012) (ALJ did not err by failing to obtain medical opinion assessing plaintiff's functional capacity; "[w]ith respect to plaintiff's obesity and alleged depression, plaintiff and his physicians have not identified additional functional limitations attributable to either condition[, and] [u]nder these circumstances, the ALJ was not required to obtain additional consultative examinations"); *Taylor v. Astrue*, 2012 WL 294532, *7 (D. Md. 2012) (ALJ adequately accounted for plaintiff's visual limitations caused by cataracts where visual acuity tests demonstrated corrected vision between 20/50 and 20/70 and ALJ "incorporated a specific visual acuity limitation reflecting these results into his RFC").

In essence, McCoy suggests that her age, limited education and work history somehow placed a burden upon the Commissioner to demonstrate that she was capable of performing the exertional requirements of medium work. (Docket # 5-1 at 11 ("[t]here is no indication from this file that [p]laintiff had the requisite strength, especially considering her age, to perform medium work")). To the contrary, the burden lies with McCoy, not the Commissioner, to establish that she suffers from limitations resulting in a restricted RFC. *See Mitchell v. Colvin*, 2015 WL 3970996, *4 (W.D.N.Y. 2015) ("[i]t is, however, [p]laintiff's burden to prove h[er] RFC"); *Williams v. Berryhill*, 2018 WL 987257, *5 (N.D.N.Y. 2018) ("[t]he plaintiff bears the burden of producing evidence to establish any functional limitations that would prevent him or her from engaging in substantial gainful activity") (citing 20 C.F.R. § 416.929(a)(3)). As recounted above, there is very little in the record to suggest, much less establish, that McCoy suffers from any physical limitations.

### B. The ALJ's Mental RFC Assessment

I turn next to McCoy's contention that the ALJ failed to account for the moderate limitations assessed by Souder. (Docket # 5-1 at 12-15). Specifically, McCoy maintains that the ALJ's RFC assessment fails to account for her limited ability to maintain attendance, a regular work schedule, and attention or concentration for extended periods. (*Id.*).

I disagree. McCoy is correct that Souder opined that McCoy would be moderately limited in her ability to understand, remember, and carry out detailed instructions, maintain attention and concentration for extended periods, perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances, work in coordination with or in proximity to others without being unduly distracted by them, complete a normal workday and workweek without interruptions from psychologically-based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods, interact appropriately with the general public, accept instructions and respond appropriately to criticism from supervisors, and get along with coworkers or peers without distracting them or exhibiting behavioral extremes. (Tr. 92-94). Nevertheless, Souder concluded that despite these limitations McCoy retained the mental ability to understand, recall, and carry out 2-3 step tasks in an environment where contact with others was superficial and infrequent, and would be able to adapt to routine changes and work pressures. (Tr. 94).

I find that the ALJ's RFC assessment accounted for the limitations assessed by Souder and was entirely consistent with her opinion that McCoy could perform unskilled work requiring superficial and infrequent contact with others. Accordingly, I conclude that the ALJ properly evaluated and incorporated into his RFC assessment the limitations identified in Souder's opinion, even if he did not explicitly discuss each limitation. *See Patterson v. Colvin*,

2015 WL 5036934, *11 (W.D.N.Y. 2015); *Ross v. Colvin*, 2015 WL 1189559, *12 (W.D.N.Y. 2015); *Crawford v. Astrue*, 2014 WL 4829544, *22 (W.D.N.Y. 2014).  McCoy's contention that Souder's opinion was impermissibly vague is similarly unavailing.  *See Burgos v. Colvin*, 2016 WL 5661738, *13 (W.D.N.Y. 2016) (citing *Rosenbauer v. Astrue*, 2014 WL 4187210, *16 (W.D.N.Y. 2014) (collecting cases)).

The record does not support McCoy's contention that she is unable to perform unskilled work with the limitations identified by the ALJ.  Indeed, the record reflects that McCoy was able to perform activities of daily living and maintain employment, at times at substantial gainful levels, despite her mental limitations.  I conclude that the ALJ's RFC assessment was based upon a thorough review of the record and was supported by substantial record evidence; accordingly, remand is not warranted.  *Zabala v. Astrue*, 595 F.3d 402, 410 (2d Cir. 2010) ("[n]one of the clinicians who examined [claimant] indicated that she had anything more than moderate limitations in her work-related functioning, and most reported less severe limitations[;] [a]lthough there was some conflicting medical evidence, the ALJ's determination that [p]etitioner could perform her previous unskilled work was well supported").

## CONCLUSION

After careful review of the entire record, this Court finds that the Commissioner's denial of SSI/DIB was based on substantial evidence and was not erroneous as a matter of law.  Accordingly, the ALJ's decision is affirmed.  For the reasons stated above, the Commissioner's motion for judgment on the pleadings **(Docket # 7)** is **GRANTED**.  McCoy's motion for

judgment on the pleadings **(Docket # 5)** is **DENIED**, and McCoy's complaint (Docket # 1) is dismissed with prejudice.

**IT IS SO ORDERED.**

*s/Marian W. Payson*
MARIAN W. PAYSON
United States Magistrate Judge

Dated:  Rochester, New York
        June 18, 2020